IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO BOARD OPTIONS EXCHANGE, INC., DOW JONES & CO., INC., and THE McGRAW-HILL COMPANIES, INC., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| INTERNATIONAL SECURITIES EXCHANGE, LLC and THE OPTIONS CLEARING CORP., | ) ) ) |
| Defendants. | ) ) |

No. 06 C 6852

Judge Robert W. Gettleman

## MEMORANDUM OPINION AND ORDER

Plaintiffs Dow Jones & Co., Inc. ("Dow"), The McGraw-Hill Companies, Inc. ("McGraw-Hill"), and Chicago Board Options Exchange, Inc. ("CBOE") filed a three-count complaint in state court against defendants International Securities Exchange, LLC ("ISE") and Options Clearing Corp. ("OCC") alleging: misappropriation (Count I); tortious interference with prospective economic advantage (Count II); and unfair competition (Count III). Defendants removed the action to federal court, claiming that Counts I and III are completely preempted by Section 301 of the Copyright Act, 17 U.S.C. § 301(a), and that Count II is similarly preempted or within the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Plaintiffs filed a joint motion to remand the action to state court. Defendants filed a motion to stay the proceedings until the Southern District of New York rules on a similar action, as well as a motion to transfer this litigation to the Southern District of New York. For the reasons set out below, the court grants plaintiffs' motion to remand and denies defendants' motions to stay and transfer as moot.

## FACTS

Plaintiff Dow is the producer of the Dow Jones Industrial Average ("DJIA"). Plaintiff McGraw-Hill, a New York corporation, is the producer of the Standard & Poors 500 Composite Stock Price Index ("S&P 500") and has a principal place of business in New York City. The DJIA and the S&P 500 will be referred to collectively as the "Indexes." Plaintiff CBOE operates a national securities exchange and specializes in the trading of standardized securities options. Plaintiff CBOE holds the exclusive license to list standardized options contracts ("index options") on the Indexes. Defendant ISE is an all-electronic securities exchange that offers trading in securities options and proprietary index options products. Defendant OCC is the sole clearing agency for standardized securities options in the United States. Both plaintiff CBOE and defendant ISE must clear all trades through defendant OCC.

The Indexes track the United States stock markets and measure stock market performance. Plaintiff Dow Jones licenses use of the DJIA to certain securities exchanges and investment companies, which create financial products that track the DJIA and depend on the DJIA for their settlement value. Additionally, plaintiff Dow Jones publishes the official value of the DJIA on a real-time basis. It calculates the DJIA whenever one of its underlying components is transacted and disseminates the DJIA every two seconds.

Plaintiff McGraw-Hill produces the S&P 500 and other financial indexes. Plaintiff McGraw-Hill licenses the use of the S&P 500 to securities exchanges and investment companies, which create, manage, and sell financial instruments. Plaintiff McGraw-Hill (through S&P, one of its divisions) calculates S&P 500 values throughout the trading day and disseminates updated values every fifteen seconds.

Investors use the published values of the Indexes to make investment decisions. These published values also form the basis for index options contracts. An index options contract confers on the holder the right, but not the obligation, to exercise the option and receive cash for the difference between the "strike price" of the option (the price as stated in the options contract) and the value of a designated index on a specified expiration date. Unlike an equity option contract, in which an equity security (a share of common stock or exchange-traded fund) is the underlying interest, the financial index itself is the underlying interest for index options contracts. Securities exchanges, such as plaintiff CBOE and defendant ISE, offer trading in standardized securities options, which means that all terms of the contract are fixed except the price of the option itself. All standardized securities options must be traded on a national securities exchange registered with and regulated by the United States Securities and Exchange Commission ("SEC"). All exchange-traded options must also be cleared through defendant OCC, the sole issuer of standardized options contracts traded by U.S. options exchanges.

Plaintiff CBOE is registered with the SEC as a national securities exchange. It is the only exchange authorized by plaintiff McGraw-Hill to offer options on the S&P 500 Index. Plaintiff CBOE also holds the exclusive right to offer options based on the DJIA in the United States and options based on other Dow Jones Indexes.

Defendant ISE is an options trading exchange. Additionally, like plaintiffs Dow Jones and McGraw-Hill, defendant ISE creates and disseminates its own indexes. It also offers index options on its own indexes, as well as licensing the use of proprietary indexes created and disseminated by others. On November 2, 2006, defendant ISE announced its intention to commence unauthorized options trading on DJIA and S&P 500 options, although it does not

3

have licenses from either plaintiff Dow or plaintiff McGraw-Hill. Defendant ISE seeks to offer these products in direct competition with the licensed S&P 500 and DJIA options offered by plaintiff CBOE, in which plaintiffs McGraw-Hill and Dow Jones have a financial stake.

On November 2, 2006, defendant ISE and its parent company, International Securities Exchange Holdings, Inc., filed a declaratory judgment against plaintiffs Dow Jones and McGraw-Hill in the United States District Court for the Southern District of New York, seeking a declaration that: (1) defendant ISE will not infringe any rights of plaintiffs Dow Jones and McGraw-Hill by listing DJIA and S&P 500 options without licenses; and (2) such conduct by defendant ISE will not infringe plaintiffs' trademarks by using the marks in connection with the unlicensed listing of unlicensed options. Defendant ISE has also taken steps to begin listing these options without authorization, including: (1) adding DJIA and S&P 500 options to its central database; (2) preparing to allocate unauthorized DJIA and S&P 500 options among its members; and (3) drafting notices to its allocation committee regarding its allocation of unauthorized DJIA and S&P 500 options.

On November 15, 2006, plaintiffs filed a three-count complaint in the Circuit Court of Cook County, Illinois against defendants ISE and OCC. Count I asserts that permitting ISE to list and trade options on the Indexes, causing OCC to clear trades in and settle the exercise of those options, would be a misappropriation of the proprietary interests of plaintiffs Dow Jones and McGraw-Hill, as well as a misappropriation of CBOE's exclusive rights under the license agreements it has with Dow Jones and McGraw-Hill. Further, defendant ISE would "wrongfully reap" the benefits of the efforts, time, and money expended by plaintiffs in creating their Indexes and license rights. Count II alleges that allowing defendant ISE to list options on the Index

4

would cause member firms and customers to stop doing business with plaintiff CBOE and potentially damage its reputation, which constitutes tortious interference with prospective economic advantage. Count III alleges that defendant ISE's threatened acts and defendant OCC's participation "constitute unfair competition under the common law of the state of Illinois."

Defendants removed the case to federal court, asserting that Counts I and III are preempted by Section 301 of the Copyright Act. Plaintiffs filed a motion to remand the case to state court, and defendants filed a motion to stay the proceedings pending resolution of the matter before the Southern District of New York. Defendants also filed a motion to transfer the litigation to the Southern District of New York.

## DISCUSSION

Currently before the court are plaintiffs' motion to remand and defendants' motion to stay. The court must decide which motion to consider first. Defendants argue that the court should first decide their motion to stay because the declaratory judgment action in the Southern District of New York was filed first in time, and "[t]wo identical lawsuits should not proceed in federal court in different districts." Colborne Corp. v. MC Retail Foods, 1996 WL 470226 (N.D. Ill. 1995). This circuit, however, "has never adhered to a rigid 'first to file' rule." Tempco Electric Heater Corp. v. Omega Eng'r, Inc., 819 F.2d 746, 750 (7th Cir. 1987). Further, "the mere fact that [a] party filed its declaratory judgment action first does not give it a 'right' to choose a forum." Id. The court therefore finds that the "first to file" rule is not a sufficient basis on which to decide the motion to stay before the motion to remand.

5

Further, "a federal court must assure itself that it possesses jurisdiction over the subject matter of an action before it can proceed to take any action respecting the merits of the action." Cook v. Winfrey, 141 F.3d 322, 325 (7th Cir. 1998). Additionally, this district recently held, in considering a procedural matter similar to the instant case, that the court's "first step should be to make a preliminary assessment of the jurisdictional issue" before considering defendants' motion to stay. Alegre v. Aguayo, 2007 WL 141891, *3 (N.D. Ill. 2007), citing Meyers v. Bayer AG, 143 F. Supp. 2d 1044, 1048 (E.D. Wis. 2001). The court will therefore consider plaintiffs' motion to remand before defendants' motion to stay.

In their motion to remand this case to the Circuit Court of Cook County, plaintiffs argue that each of their three claims arises exclusively under state law. Defendants argue that Counts I and III are preempted by Section 301 of the Copyright Act, 17 U.S.C. § 301. As discussed by both parties, there are two types of preemption: conflict preemption and "complete" preemption. Defendants concede that conflict preemption applies only as a defense to a claim in state court and is therefore not applicable in the instant case. See, e.g., Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003) ("a defense that relies on...the preemptive effect of a federal statute will not provide a basis for removal"); People v. Northbrook Sports Club, 1999 WL 1102740, *2 (N.D. Ill. 1999) ("federal preemption that merely serves as a defense to a state law action, i.e. 'conflict preemption,' cannot alone confer federal question jurisdiction").

The instant case was properly removed to this court, therefore, only if plaintiffs' claims are "completely preempted" by federal law, that is, when "federal law so occupies the field that it is impossible even to frame a claim under state law." Ceres Terminals, Inc. v. Industrial Comm'n of Illinois, 53 F.3d 183, 185 (7th Cir. 1995). In other words, complete preemption

6

applies when the applicable federal statute "so thoroughly occupies a legislative field" that Congress intended to leave "no room for the states to act," thereby precluding all state claims in favor of federal law. XL Specialty Co. v. Village of Schaumburg, 2006 WL 2054386, *1 (N.D. Ill. 2006). The complete preemption doctrine has "limited applicability." Leto v. RCA Corp., 341 F. Supp. 2d 1001, 1008 (N.D. Ill. 2004). It applies only when "the preemptive force of a statute is so 'extraordinary' that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987), quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987).

A state claim is preempted by federal law under the complete preemption doctrine if it "provide[s] the exclusive cause of action." Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003). Section 301(f)(1) of the Copyright Act, 17 U.S.C. § 301, specifically provides that the statute will preempt claims of state law rights that, (1) "come within the subject matter of copyright as specified by sections 102 and 103," and (2) "are equivalent to any of the exclusive rights within the general scope of copyright as specified by § 106 in works of authorship that are fixed in a tangible medium of expression." The statute also states explicitly that unless both of these requirements are satisfied, the state law claim is not preempted: "Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to...subject matter that does not come within the subject matter of copyright...or... activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(b). Additionally, the statute's legislative history states unequivocally that "[s]tate law causes of action such as those for

7

misappropriation [and] unfair competition...are not currently preempted under § 301, and they will not be preempted under the proposed [amendments to the Copyright Act]." H. Rep. No. 101-514, at 21 (June 1, 1990).

The text and legislative history of the statute do not provide for complete preemption of state law misappropriation and unfair competition claims in general. The court must therefore analyze whether plaintiffs' specific claims satisfy the Copyright Act's two requirements for preemption. The statute's first requirement is that plaintiffs' state law claims "come within the subject matter of copyright as specified by sections §§ 102 and 103." These sections protect as copyright subject matter "original works of authorship fixed in any tangible medium of expression." Section 102 enumerates categories that meet this definition: literary and musical works; motion pictures; sound recordings; and other modes of creative expression.

Plaintiffs' claims for misappropriation and unfair competition are not based on defendants' threatened use of the published Index values themselves as "works of authorship." Instead, their claims are based on defendants' intended use of plaintiffs' research and development used to create the Indexes, in addition to goodwill, skills, labor, reputation, and necessary expenditures. In Board of Trade of the City of Chicago v. Dow Jones & Co., Inc., 98 Ill. 2d 109, 121-22 (1983), the Illinois Supreme Court recognized that "publication of the indexes involves valuable assets of [Dow Jones], its good will and its reputation for integrity and accuracy," which entitled it to "protection against their misappropriation" under state law. The property interests that plaintiffs seek to protect have been recognized by the highest court of the state as state law claims, and thus do not fall within the subject matter of copyright as required by 17 U.S.C. §§ 102 and 103.

Plaintiffs' claims also fail to meet the second preemption requirement: that the rights plaintiffs seek to protect are equivalent to any of the exclusive rights within the general scope of copyright as specified by § 106 of the Copyright Act, which include reproduction, preparation of derivative works, distribution of copies, public performance, public display, and public transmission. 17 U.S.C. § 106. Defendants argue that plaintiffs' claims are based on defendants' intended "copying and distributing [of] factual information embodied within works such as Internet websites and newspapers." This statement is a gross oversimplification of plaintiffs' claims. Plaintiffs are concerned not with defendants' intended copying of the Index values, but of their <u>use</u> of the unlicensed material for defendants' profit. For this very reason, the Second Circuit found that the use of Index values "does not fall within the scope of federal copyright law." <u>Dow Jones & Co. v. Int'l Sec. Exch.</u>, 451 F.3d 295, 302 n.8 (2d Cir. 2006). Plaintiffs' claims therefore do not meet the second requirement for complete preemption by the Copyright Act.

Because plaintiffs' claims for misappropriation and unfair competition do not meet the requirements for complete preemption by the Copyright Act, this court has no jurisdiction. Plaintiffs' motion to remand the case to the Circuit Court of Cook County is granted. Defendants' motions to stay and transfer are denied as moot.

## CONCLUSION

For the reasons stated above, the court grants plaintiffs' motion to remand and denies defendants' motion to stay and transfer.

**ENTER: February 23, 2007**

_____
**Robert W. Gettleman**
**United States District Judge**